USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/27/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BOSTON TEA COMPANY, LLC,

                      Plaintiff,

-against-

BAY VALLEY FOODS, LLC,

                      Defendant.

1:17-cv-04742 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

    Plaintiff Boston Tea Company brings this action against Defendant Bay Valley Foods ("Defendant" or "Bay Valley") alleging breach of contract and the implied covenant of good faith and fair dealing, unfair competition, misuse of confidential information, tortious interference with contract, and tortious interference with prospective business advantage all in connection with a licensing agreement. Before the Court is Defendant's motion to dismiss Plaintiff's misuse of confidential information claim. ECF No. 41. After careful consideration, Defendant's motion to dismiss is **GRANTED**.

## BACKGROUND

    The facts of the case were fully set forth in the Court's Opinion and Order dated April 4, 2018, (the "Order"), ECF No. 36. Accordingly, familiarity with the facts is assumed and the summary to follow will only highlight facts necessary for the motion presently before the Court. Plaintiff Boston Tea is a corporation that sells tea and related products under tradenames including BOSTON TEA, BENTLEY'S, LORD BUCKLEY'S, and WINDSOR GARDENS. Am. Compl. ¶ 11, ECF No. 27. Defendant Bay Valley is a national provider of shelf-stable foods. *Id.* at ¶ 12.

    On January 1, 2012, Plaintiff entered into a License Agreement with North American Tea & Coffee Inc., which was ultimately acquired by Bay Valley's parent company, TreeHouse. *Id.*

1

¶ 17. As a result, Defendant succeeded to North American Tea & Coffee Inc.'s rights and obligations under the License Agreement with Boston Tea's consent. *Id.* The License Agreement provided Defendant with an exclusive worldwide license to sell and distribute Plaintiff's products. *Id.* at ¶ 18. It also prohibited Defendant from "tak[ing] or fail[ing] to take any action . . . that would reasonably be expected to adversely affect [Plaintiff's] reputation or the goodwill associated with [its] Intellectual Property." Simultaneously, Plaintiff entered into an Asset Purchase Agreement with Defendant's predecessor-in-interest, under which Plaintiff "sold certain assets but expressly did not sell, and retained ownership of, certain intangible assets including [Plaintiff's] intellectual property and goodwill related to [Plaintiff's] intellectual property." *Id.* at ¶ 22. Pursuant to these agreements, Plaintiff alleges it provided Defendant "with extensive confidential, proprietary, and highly material financial and business information, including the identities of and contact information for [Plaintiff's] customers, [Plaintiff's] pricing and mark-up information, marketing presentations and [Plaintiff's] future strategies and plans." *Id.* at ¶ 89.

In December 2015, Plaintiff alleges that Defendant entered into an unauthorized sublicense agreement with MSRF, a third party. Plaintiff claims that the Distribution Agreement gave MSRF exclusive rights to sell Plaintiff's brands in North America, and that MSRF was Defendant's de facto agent during the relevant period, making Defendant liable for the acts and omissions of MSRF. *Id.* at ¶¶ 37, 43. Plaintiff also alleges that MSRF engaged in actions that knowingly injured Plaintiff's sales, customer relations, and goodwill, and that MSRF promoted and sold competing products even though the Distribution Agreement expressly prohibited it from doing so. *Id.* at ¶ 44. In doing so, Plaintiff alleges Defendant and MSRF misused confidential information that includes, but is not limited to, customer contact information, sales

and order history both before and during the term of the License Agreement. *Id.* at 73; 89. On October 24, 2016, Plaintiff informed Defendant that it was terminating the License Agreement. *Id.* at ¶ 55. The Parties agreed on November 3, 2016, that the License Agreement would be terminated on March 31, 2017. *Id.*

On November 29, 2017, Defendant moved to dismiss Plaintiff's Amended Complaint. ECF No. 29. The Court issued an order granting in part and denying in part Defendant's motion. ECF No. 36. Specifically, the Court dismissed the fourth claim for tortious interference with contract; the sixth claim for injunctive relief; and the seventh claim for accounting and/or inspection of books and records. The Court denied the motion to dismiss as to the first claim for breach of contract and the implied covenant of good faith and fair dealing; the second claim for unfair competition; the third claim for misuse of confidential information; and the fourth for tortious interference with prospective business advantage. However, the court permitted the Defendant to renew its motion to dismiss the misuse of confidential information claim because the parties had not adequately addressed whether they had entered into a confidential relationship.

## STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

## DISCUSSION

To plead a claim of misuse of confidential information Plaintiff "must show (1) that a confidential relationship existed; (2) that they disclosed what amounted to confidential information to defendants in the course of that relationship; and (3) that defendants made use of these disclosures." *Those Characters from Cleveland, Inc. v. J.J. Gams, Inc.*, No. 86 CIV. 3180 (VLB), 1992 WL 135580, at *9 (S.D.N.Y. Apr. 13, 1992). The threshold issue is whether or not the contractual arrangement here constituted a confidential relationship. "Under New York law, a confidential relationship is 'synonymous with fiduciary relationship and ... [exists] generally where the parties do not deal on equal terms and one trusts and relies on the other.' . . . Such a relationship may arise either explicitly by contract, or implicitly by the actions of the parties or other circumstances." *Stewart v. World Wrestling Fed'n Entm't, Inc.*, No. 03 CV 2468 RLC, 2005 WL 66890, at *4 (S.D.N.Y. Jan. 11, 2005) (citations omitted).

Because the parties have neither explicitly nor implicitly entered into a confidentiality agreement, the Court finds that the Plaintiff has failed to plead a misuse of confidential

4

information claim. To elaborate, the parties did not enter into a confidentiality agreement concerning Defendant's use of Plaintiff's customer lists, sales and order history, or other proprietary information. In fact, the only provision relating to confidentiality under either the License Agreement or the Asset Purchase Agreement involved information relating to completing the transaction. *See* Asset Purchase Agreement, ECF No. 31.1 at § 13.1. The existence of such a provision—that is one that protects confidentiality surrounding information considered for forming the contract—in it of itself cannot support the creation of a confidential relationship. *See Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 323 (S.D.N.Y. 2010).

Furthermore, contrary to Plaintiff's position, a confidential relationship cannot be implied from combining the License Agreement with the Asset Purchase Agreement and viewing them as one integrated agreement. When read together along with the implied covenant of good faith, Plaintiff asserts that the contract created a confidential relationship regarding how customer and sales information could be used. Plaintiff cites to the following two New York state cases to support their position that Defendant's motion should be denied: *ADT Operations v. Chase Manhattan Bank, N.A.*, 173 Misc. 2d 959, 970 (Sup. Ct. N.Y. Co. 1997) and *Synergy Advanced Pharm., Inc. v. Capebio*, LLC, 2013 N.Y. Misc. Lexis 2060, *23 2013 NY Slip Op 31042(U) (Sup. Ct. N.Y. Co. March 27, 2013). However, in both cases, the parties had entered into confidentiality agreements concerning the use of confidential information at issue in those cases. *See Synergy Advanced Pharm., Inc. v. Capebio*, LLC, 2013 N.Y. Misc. Lexis 2060, *23 2013 NY Slip Op 31042(U) (Sup. Ct. N.Y. Co. March 27, 2013); *ADT Operations v. Chase Manhattan Bank, N.A.*, 173 Misc. 2d 959, 970 (Sup. Ct. N.Y. Co. 1997).

Beyond the fact that Plaintiff cites to no case law that supports its proposition that a confidential relationship can be implied from reading the agreements and the implied covenant

5

of good faith together, Plaintiff fails to allege any facts that would support the creation of a confidential relationship more generally. In determining if the parties have entered into a confidential relationship, courts typically consider the sophistication of the parties and the nature of their relationship both before and after entering into the contract; specific factors include whether the parties engaged in an arm's length transaction, had prior dealings, and are on equal footing. *See e.g.*, *Boccardi Capital Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*, No. 05 CV 6882 (GBD), 2009 WL 362118, at *6–7 (S.D.N.Y. Feb. 9, 2009), *aff'd*, 355 F. App'x 516 (2d Cir. 2009) (citations omitted) (considering whether the parties were on "equal footing," had a "purely commercial relationship," and engaged in "arms length negotiations"); *Stewart*, 2005 WL 66890, at *4 (considering the factors of unequal "bargaining power" and repeated contact between the parties); *Grupo Sistemas Integrales de Telecomunicacion S.A.de C.V. v. AT&T Commc'ns, Inc.*, No. 92 CIV. 7862 (KMW), 1996 WL 312535, at *9–10 (S.D.N.Y. June 10, 1996) (considering the parties' sophistication, experience, expertise and prior business dealings).

Here, Plaintiff has failed to allege any facts that suggest it was an unsophisticated party, that it had unequal bargaining power, or that it lacked the relevant expertise in marketing and sales. Furthermore, nothing in the Amended Complaint suggests the parties did not engage in an arm's length negotiation. Lastly, the Asset Purchase Agreement makes clear that the Defendant purchased the alleged confidential information at the time of closing. Asset Purchase Agreement §§ 3.1, 10.1. In fact, § 3.1 of the Asset Purchase Agreement lists "accounts receivable," "the benefit of all unfilled orders received and held by Seller," "customer lists," and "all intangible personal property other than the Intellectual Property" as assets that were purchased through the agreement upon closing. Given the that the parties engaged in an arm's length negotiation, it cannot be said that Plaintiff relied on the Defendant to maintain the confidentiality of

information it sold to the Defendant; this is true, even if the agreement is read alongside the License Agreement and with the implied covenant of good faith and fair dealing.

As a result of the above factors, the absence of a confidentiality provision or agreement related to the use of alleged confidential information from the contract is significant. *See Those Characters from Cleveland, Inc.*, 1992 WL 135580, at *1116. If Plaintiff wanted to create a confidential relationship between itself and the Defendant, it could and should have done so explicitly. Accordingly, although the question of "whether such confidential relationship exists is ultimately a question to be determined by the trier of fact," in this case the Plaintiff has not met their burden of "alleg[ing] certain facts that would create this relationship," such that its claim can survive a motion to dismiss. *Stewart*, 2005 WL 66890, at *4.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED.**

**SO ORDERED.**

Dated: September 27, 2019
New York, New York

ANDREW L. CARTER, JR.
**United States District Judge**